NOT DESIGNATED FOR PUBLICATION

No. 120,007

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

TAMARA RENEE OGORZOLKA,
*Appellee.*


MEMORANDUM OPINION


Appeal from Ellis District Court; BLAKE A. BITTEL, judge. Opinion filed November 8, 2019. Reversed and remanded with directions.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellant.

*John C. Herman*, of Herman Law Office, P.A., of Hays, for appellee.


Before POWELL, P.J., HILL and WARNER, JJ.


POWELL, J.: Tamara Renee Ogorzolka was charged with misdemeanor driving under the influence (DUI) and driving left of center. She moved to suppress the evidence derived from the stop, arguing she was not given the proper notices before the breath test. The district court granted a series of continuances on its own initiative in anticipation of two Kansas Supreme Court decisions addressing the propriety of the informed consent notice statute. Over 500 days after the motion to suppress was filed and 360 days after those decisions were issued, the district court denied Ogorzolka's motion to suppress. Ogorzolka then moved to dismiss the complaint based on statutory speedy trial grounds.

1

The district court granted this motion, and the State now appeals, arguing K.S.A. 2018 Supp. 22-3402(g) bars dismissal. We agree with the State and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

On July 24, 2016, Ogorzolka was issued a citation and notice to appear before the Ellis County District Court on misdemeanor charges of DUI and driving left of center.

On August 30, 2016, Ogorzolka made her first appearance. The journal entry from this first appearance has no box checked to show if a plea was made at the hearing and no hearing transcript exists. That same day Ogorzolka's counsel entered an appearance and a not guilty plea on behalf of Ogorzolka.

A status hearing was held on September 27, 2016, at which Ogorzolka appeared through counsel; at counsel's request, this status conference was continued to November 22, 2016. The November conference was also continued to December 13, 2016, but the record does not reflect at whose request. At the December conference, Ogorzolka's counsel requested another continuance to January 23, 2017.

Before the January conference, Ogorzolka's counsel sought a bill of particulars. Consideration of that matter and the status conference were set for February 13, 2017.

On January 24, 2017, Ogorzolka's counsel moved to suppress the results of Ogorzolka's breath test failure on the grounds of the State's lack of substantial compliance with the required notice procedure before the breath test. The motion referenced two pending decisions awaiting rehearing by the Kansas Supreme Court: *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016) (*Nece I*), and *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*).

2

At the status conference on February 13, 2017, the district court ordered the State to file a response to Ogorzolka's motion. Because the State had recently briefed the same issue in other pending cases, the district court gave the State 7 days to file its brief and Ogorzolka 14 days in which to respond. The district court scheduled the matter for a status conference on March 13, 2017, and excused Ogorzolka's presence at the next hearing. The parties properly submitted their briefs.

At the March hearing, Ogorzolka appeared through counsel, and the district court stated it planned to review the filed briefs and determine if oral argument was needed on Ogorzolka's motion to suppress. The journal entry of the status conference indicated that if oral argument was not needed then the district court would "either issue a written ruling or notify the parties to appear in Court for an oral announcement of ruling." Another status conference was set for May 8, 2017.

At the May status conference, the district court indicated that it anticipated no need for oral argument on the motion to suppress and that it would "render a decision." Another status conference was scheduled for June 12, 2017. At the June status conference, the district court acknowledged it had yet to issue a ruling and again continued the case to August 14, 2017.

On June 30, 2017, the Kansas Supreme Court issued its opinions in *State v. Nece*, 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*), and *State v. Ryce*, 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*). *Nece II* reaffirmed the Supreme Court's earlier pronouncement in *Nece I* that the statutory implied consent notice was unconstitutional as it inaccurately advised a suspect that he or she could be subject to criminal penalties for refusing to submit to a breath alcohol test. 306 Kan. at 681. *Ryce II* reaffirmed *Ryce I*'s holding that the statute criminalizing a suspect's refusal to submit to a chemical test for alcohol was unconstitutional. 306 Kan. at 700.

At the August status conference, the following exchange occurred:

"THE COURT: . . . I believe we were waiting on some decisions from the . . . Kansas Supreme Court. Where I am at on this, those have come down, and I have scheduled and blocked off the 23rd and 24th day of August to rule on all three matters.

"[THE DEFENSE]: Does the court maybe just want to set these over for September Motion Day then and go that way[?]

"THE COURT: That's fine. But unless—I blocked off two days, and it's my every intention to get them off my desk.

"[THE DEFENSE]: And Your Honor, it's the same legal issue in each of them.

"THE COURT: Right.

. . . .

"[THE DEFENSE]: [The State], do you have any other better ideas or anything?

"[THE STATE]: No.

"THE COURT: Okay.

. . . .

"[THE STATE]: If the court issues its ruling—

"THE COURT: Yes.

"[THE STATE]: —fine, otherwise we'll be back in September.

. . . .

4

"THE COURT: September 15th. I did set off two days and hopefully that will be enough time to get it done.

"Okay. Thank you.

"[THE DEFENSE]: Okay.

"[THE STATE]: Well it's something that's got to be reviewed by the Appellate Court, the Supreme Court of Kansas, and possibly the U.S. Supreme Court, Judge.

"THE COURT: Yeah.

"[THE DEFENSE]: And well, the only other thing I will mention to Your Honor, you know, I was trying to kind of separate things out and figure out ways to go in different cases. I haven't filed this in all of these, but obviously because of [*Ryce II*], we have another suppression issue if we get there at that point then. So.

"THE COURT: Right.

"[THE DEFENSE]: I assume the court at this point doesn't want us filing really anything new until we figure out where we are.

"THE COURT: No. I will go ahead and rule on what you've filed."

The district court once again scheduled a status conference for September 18, 2017, and excused Ogorzolka's presence at that hearing.

At the September status conference the district court stated it was actively working on the opinion and hoped to issue a decision by October 1, 2017. The record after September 2017 is scant, and it does not appear that the October status conference took place as the district court rescheduled the conference for November 13, 2017. At the November status conference the district court continued the matter to December 11,

2017, and subsequently another status conference was set for January 22, 2018. It does not appear from the record that the January conference took place, and no other action was taken until June 2018.

On June 25, 2018, some 360 days after the decisions in *Nece II* and *Ryce II* were issued and 517 days after the filing of the motion to suppress, the district court finally issued its opinion denying Ogorzolka's motion to suppress. Once again, the district court scheduled a status conference, this time for August 13, 2018.

Subsequently, on August 6, 2018, Ogorzolka's counsel moved to dismiss the charges, arguing Ogorzolka's statutory speedy trial right had been violated. The State responded that the issues raised in the motion to suppress were novel so the time to process the motion to suppress was reasonable. The district court considered the parties' arguments and took the matter under advisement.

On August 20, 2018, the district court filed an order granting Ogorzolka's motion to dismiss. The district court held:

> "Given the issues raised the court was patient during the initial months of delays attributable to [Ogorzolka]. At no time during any hearings that followed or via separate notice or otherwise did [defense counsel] give any indication to the court, or to the State, that the amount of time the court took to find enough time on its calendar to give full consideration to the issues raised was becoming unreasonable, prejudicing the absent Defendant, or [a]ffecting her rights.
>
> "It was known and understood by the attorney for the State and [defense counsel] that following a wait on opinions from the Supreme Court regarding issues raised by [Ogorzolka] in the Motion to Suppress there was a multitude of cases before this court that became ripe at the same time, many of which had been stayed pending certain decisions by the Supreme Court. In addition, briefs filed by [defense counsel], in this case and others, raised new and novel arguments different from those to be analyzed in other

6

similar cases before the court. Under the circumstances the court disagrees with [defense counsel's] suggestion of procrastination.

"Throughout the process defense counsel appeared to acquiesce and there is no fault on the State for causing any issues with speedy trial. As set forth above, although the court understands the issue can be raised at any time, [defense counsel] chose to wait to the last hour to file the motion, after the Motion to Suppress was decided in the State's favor.

"However, the problem at this point is that the court cannot say that [Ogorzolka] herself actually acquiesced as she was excused from appearing at the status conferences and hearings that occurred during the latter part of the case while the motion was finally under advisement. As such, the case is hereby dismissed."

The State timely appeals.

### DID THE DISTRICT COURT ERR IN DISMISSING THE CASE FOR VIOLATING OGORZOLKA'S STATUTORY RIGHT TO A SPEEDY TRIAL?

On appeal, the State argues that the district court erred in holding Ogorzolka's statutory right to a speedy trial was violated and dismissing the charges against her. The State makes three arguments to support its position:  (1) The speedy trial statute did not apply because Ogorzolka was never arraigned; (2) Ogorzolka's statutory speedy trial rights were not violated because she either agreed with the continuances or acquiesced in them; and (3) K.S.A. 2018 Supp. 22-3402(g) prohibits dismissal of a case on statutory speedy trial grounds if a delay at first attributable to the defendant is subsequently charged to the State.

"This court exercises unlimited review over a district court's legal rulings regarding violations of a defendant's statutory right to a speedy trial." *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009). To the extent resolution of this issue requires

7

interpretation of a statute, which is a question of law, our review on that question is unlimited as well. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). As the appellant, the State bears the burden of providing a sufficient record on appeal. See *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015).

The Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights guarantee a criminal defendant the right to a speedy and public trial. The purpose of the speedy trial statute, specifically K.S.A. 2018 Supp. 22-3402, "is to implement the accused's constitutional right to a speedy trial." *State v. Green*, 252 Kan. 548, 550, 847 P.2d 1208 (1993).

K.S.A. 2018 Supp. 22-3402(b) states:

"If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within 180 days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (e)."

This statute requires the accused to be brought to trial within 180 days after his or her arraignment. The remedy for the State's failure to bring the accused to trial within the required time is dismissal of the pending charges. The speedy trial clock begins to run at a defendant's arraignment, which includes a defendant's waiver of arraignment. *State v. Robinson*, 306 Kan. 1012, 1018, 399 P.3d 194 (2017). According to the record before us, subsection (e) is inapplicable.

Ogorzolka was held on an appearance bond, making K.S.A. 2018 Supp. 22-3402(b) applicable to her. But the State argues the speedy trial clock never began to run because Ogorzolka was never arraigned as the journal entry from her first appearance does not show what plea, if any, was made.

"'Arraignment' means the formal act of calling the defendant before a court having jurisdiction to impose sentence for the offense charged, informing the defendant of the offense with which the defendant is charged, and asking the defendant whether the defendant is guilty or not guilty." K.S.A. 2018 Supp. 22-2202(c). K.S.A. 22-3205(a) requires the arraignment to be conducted in open court, but in misdemeanor cases the defendant may appear by counsel instead of personally.

The hearing at issue occurred on August 30, 2016. No transcript of the hearing could be produced because no record was found when the State requested production of the transcript. This may be because the State identified the date of the hearing as August 31, 2016, the date the journal entry was filed. Yet, in actuality, according to the date noted on the journal entry and the Register of Actions, the hearing occurred on August 30, 2016. Whatever the reason, there is no transcript of the hearing in the record, and it is the State's burden to designate a record on appeal showing error. See *Sisson*, 302 Kan. at 128.

The journal entry of the hearing is titled "Journal Entry of First Appearance." Yet this alone does not establish that an arraignment did not occur because a "judicial proceeding that constitutes the first appearance in a felony case *may* be utilized for the arraignment in a misdemeanor case provided the requirements of an arraignment (K.S.A. 22-3205) are met." *State v. Taylor*, 3 Kan. App. 2d 316, 320, 594 P.2d 262 (1979); see *City of Derby v. Lackey*, 243 Kan. 744, 745, 763 P.2d 614 (1988).

The journal entry has a section titled "FIRST APPEARANCE/ARRAIGNMENT." The district court made these notes in that section:

> "The court reads the charges or explains the substance of the charges and applicable penalties to defendant and informs defendant of all constitutional and statutory rights at all stages of the proceedings including the right to counsel, to trial, and all

9

matters pertaining to trial, the burden upon the prosecution to prove guilt beyond a reasonable doubt, and of the available pleas. Defendant states that he/she understands the charges and penalties."

Using these notes as a guide, all the requirements of an arraignment were met except for the entry of Ogorzolka's plea. See K.S.A. 22-3205(a); *State v. Rosine*, 233 Kan. 663, 669, 664 P.2d 852 (1983).

The journal entry also has a section titled "PLEA" next to which there are lines to be checked and these options: "The defendant enters a plea of ___ guilty; ____ no contest; ___ not guilty; ___ no plea at this time." The district court did not check any of these options. While at first blush it may seem this means there was no plea made at this hearing, a closer look shows otherwise. First, there is an option for the district court to check if there was no plea made, and the district court did not do so. Second, there was a formal not guilty plea filed by Ogorzolka the same day of the hearing. Although we are lacking the transcript, putting the pieces together reveals that Ogorzolka did enter a plea, and the failure of the district court to show what plea was made appears to be a clerical error which should not compromise Ogorzolka's right to be protected by the speedy trial statute. Given the State's failure to meet its duty to designate "a record that *affirmatively* shows the error," we hold K.S.A. 2018 Supp. 22-3402 applies. (Emphasis added.) See *Sisson*, 302 Kan. at 128.

The State also argues that K.S.A. 2018 Supp. 22-3402(g) bars dismissal of Ogorzolka's DUI charge as a remedy. We consider this argument next because it is dispositive.

The statute reads:

"If a defendant, or defendant's attorney in consultation with the defendant, requests a delay and such delay is granted, the delay shall be charged to the defendant regardless of the reasons for making the request, unless there is prosecutorial misconduct related to such delay. If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay." K.S.A. 2018 Supp. 22-3402(g).

In *State v. Brownlee*, 302 Kan. 491, 510-11, 354 P.3d 525 (2015), the Kansas Supreme Court held:

"The two sentences of [K.S.A. 2012 Supp. 22-3402(g)] are not worded to make them contingent upon each other. The first sentence clearly applies to situations . . . where the defendant himself, or upon consultation with his attorney, requests a delay that is granted. In such a factual scenario, the defense is charged with the delay for speedy trial purposes, barring related prosecutorial misconduct. The second sentence is much broader in its application. It involves situations where *'a* delay is initially attributed to the defendant[ ] but is subsequently charged to the state for *any reason*. . . .' (Emphases added.) K.S.A. 2012 Supp. 22-3402(g). The second sentence covers the factual scenarios encompassed by the first sentence, *i.e.*, those in which the defendant alone or in consultation with counsel requested a delay. But it is not limited to such situations. Absent prosecutorial misconduct or a violation of a defendant's constitutional speedy trial right, the second sentence also is applicable to any factual situation in which a delay initially charged to the defense is subsequently charged to the State."

"Under subsection (g), the legislature, which created the statutory right, has decided to eliminate the remedy for its violation in certain circumstances." 302 Kan. at 511. The facts here fall within subsection (g).

11

"The State bears the responsibility for ensuring that the accused is provided with a speedy trial in accordance with K.S.A. 2006 Supp. 22-3402. The defendant is not required to take any affirmative action to ensure that his or her right to a speedy trial is observed." *State v. Adams*, 283 Kan. 365, 369, 153 P.3d 512 (2007). Yet, if a delay is caused by a defendant's application or fault, including the filing of a motion to suppress, that delay pauses the running of the speedy trial clock. K.S.A. 2018 Supp. 22-3402(b); *Brownlee*, 302 Kan. at 506-07.

This notwithstanding, the Kansas Supreme Court has also held there is a reasonableness requirement in the time charged to the defendant during the pendency of his or her filed motions. See *City of Dodge City v. Downing*, 257 Kan. 561, 563-64, 894 P.2d 206 (1995). The time chargeable to the defendant begins on the date the defendant's motion is filed, but the defendant can only be charged with the reasonable amount of time the district court has the motion under advisement. See *State v. Southard*, 261 Kan. 744, 749, 933 P.2d 730 (1997).

Moreover, judicial procrastination cannot be attributed to the defendant. *State v. Prewett*, 246 Kan. 39, 43, 785 P.2d 956 (1990). "Any party filing a motion has a right to assume it will be acted upon expeditiously after submission." *State v. Roman*, 240 Kan. 611, 613, 731 P.2d 1281 (1987). "Not all of the time taken by the court to rule on the motion to suppress should be chargeable to the defendant. Instead, when the motion is taken under advisement for a long period of time, only a reasonable time . . . should be properly charged to the defendant." *Downing*, 257 Kan. at 564.

In *Downing*, 257 Kan. at 564-65, the Kansas Supreme held that 30 days were properly attributed to the defendant—16 days of which were granted for briefing after the filing of the motion and 14 days when the defendant's motion to suppress was under advisement—and that a reasonable amount of time for the district court to have a motion to suppress under advisement was "no longer than two to three weeks." See *Southard*,

12

261 Kan. at 748-49. Similarly, in *Roman*, 240 Kan. at 613, the Supreme Court remarked that under appropriate circumstances "at most two or three weeks" could be charged to the defendant while the district court takes a motion to suppress under advisement but found that keeping a motion to suppress under advisement for 179 days was an unreasonable time and not attributable to the defendant.

Here, Ogorzolka's motion to suppress was under advisement for 517 days. Although not decided on the precise issue Ogorzolka raised in her motion to suppress, different panels of our court applied *Nece II* and *Ryce II* in about 50 cases while Ogorzolka's motion to suppress sat under advisement before the district court. See, e.g., *State v. Robinson*, 55 Kan. App. 2d 209, 410 P.3d 923 (2017). Even if we only count the time from the filing of the opinions on which the district court was awaiting—*Nece II* and *Ryce II*—360 days elapsed while the matter remained under advisement. Regardless of the novel issues raised, a motion to suppress remaining under advisement for nearly a year is unreasonable. See *Downing*, 257 Kan. 564-65; *Roman*, 240 Kan. at 613.

Ogorzolka first requested the delay in the case by filing her motion to suppress, and that delay was originally attributable to her. However, because the matter was taken under advisement for an unreasonable amount of time and because it was unclear if Ogorzolka consented to the delay, the district court later attributed the delay to the State. And although the delay here was several hundred days—517 days from the filing of the motion to dismiss and 360 days after the filing of *Nece II* and *Ryce II*—the Legislature has removed the remedy of dismissal when a district court later attributes delays to the State originally attributable to a defendant. See K.S.A. 2018 Supp. 22-3402(g). Accordingly, because the only speedy trial violation before us is a purely statutory one arising from the 180-day limit and because the Legislature expressly forbids dismissals on statutory speedy trial grounds in these circumstances, the district court erred by dismissing the case on statutory speedy trial grounds. See K.S.A. 2018 Supp. 22-3402(b), (g).

13

Finally, we note that the limitation in K.S.A. 2018 Supp. 22-3402(g) is subject to two conditions. First, the delay in bringing a case to trial cannot be the result of prosecutorial misconduct. Second, applying K.S.A. 2018 Supp. 22-3402(g) cannot result in a violation of a defendant's constitutional speedy trial rights. But Ogorzolka makes no argument that prosecutorial misconduct precipitated the lengthy delays in this case, and the record contains no evidence of this. She also does not argue that application of K.S.A. 2018 Supp. 22-3402(g) violates her constitutional speedy trial rights. Therefore, for the purposes of this appeal, Ogorzolka has waived any argument that these conditions of K.S.A. 2018 Supp. 22-3402(g) are present here. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). Accordingly, the district court erred in dismissing the case on statutory speedy trial grounds.

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion. The State's argument concerning whether Ogorzolka acquiesced in the delays is moot.

Reversed and remanded with directions.