NOT DESIGNATED FOR PUBLICATION

No. 123,196

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSEPH R. COUCH,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed September 3, 2021. Affirmed.

*Julie McKenna*, of McKenna Law Office, P.A., of Salina, for appellant.

*Valerie D. Hansen*, assistant district attorney, *Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before WARNER, P.J., CLINE, J., and WALKER, S.J.


PER CURIAM: Joseph R. Couch seeks to vacate his DUI conviction, arguing the State violated his statutory and constitutional rights to a speedy trial. The State dismissed its first case against Couch without prejudice since its key witness was unavailable for trial. It promptly refiled the same DUI charge. Couch moved to dismiss the second case on speedy trial grounds, which was denied. He argues the district court should have started his speedy trial clock during his first case. Since Couch was not arraigned in his first case, and the State dismissed that case out of necessity, we find the district court correctly excluded that time from its analysis. We also find the district court properly

1

considered the applicable four-factored test with respect to his constitutional claim and correctly determined his constitutional speedy trial right was not violated.

FACTS

Couch was arrested on June 3, 2017, for driving under the influence of alcohol and failing to dim his headlights in case 17TR1830. It was his second DUI offense. He bonded out of jail sometime later that day. Couch appeared on June 9 for a bond hearing but was never arraigned on the charges.

After Couch requested six continuances of the pretrial conference, he filed a motion to suppress. The district court heard and denied his motion on April 2, 2018. Couch then requested a jury trial, which the court set for July 10.

Both the State and Couch separately requested continuances of the trial, which was ultimately set for November 6, 2018. In anticipation of trial, the State served the arresting officer, Deputy Travis Vogt, with a trial subpoena on October 22. On October 25, the State moved to continue the trial because Deputy Vogt was scheduled to be out on leave November 5-9. Rather than hold the trial on November 6, the district court heard the parties' arguments on the State's motion for a continuance. The State informed the court it was unable to proceed to trial that day because Deputy Vogt was unavailable. The State requested the trial be reset within the next two weeks. Couch's counsel objected and stated she did not know if she would have time within the next two weeks for a jury trial. The court denied the State's requested continuance, citing the number of times the case had been continued. That same day, the State dismissed the charges without prejudice.

On November 8, 2018, the State re-filed the DUI charge against Couch in case 18TR3545. Couch appeared in court on November 30 and pled not guilty. An attorney

2

entered her appearance for Couch on December 18 and moved to continue the pretrial conference scheduled for that day. Her entry of appearance stated Couch waived his formal arraignment and pled not guilty. The district court granted the motion to continue, setting the pretrial conference for January 15, 2019.

Couch filed a motion to suppress on January 14, which the district court heard and denied on February 4. Couch filed a second motion to suppress on March 5, which the court scheduled to be heard on April 25. After Couch moved to continue this hearing, the court rescheduled the hearing for June 17. On the day of the hearing, the State moved for a continuance because the prosecutor needed to return with a specific witness to lay the foundation for certain evidence. The court granted the State's request over Couch's objection. The court tried to reschedule the hearing in July, but Couch's counsel was unavailable until August. The court rescheduled the hearing for August 5.

After denying Couch's second motion to suppress, the district court set the jury trial for November 5, 2019. The State served Deputy Vogt with a trial subpoena, then moved to continue the trial because he was scheduled to be on leave November 3-11. The court granted the motion over Couch's objection and rescheduled the jury trial for January 7, 2020.

On January 5, Couch moved to continue the jury trial. The district court then rescheduled the trial for February 24, 2020. On February 12, Couch moved to dismiss the charge based upon alleged violations of his statutory and constitutional rights to a speedy trial. He argued the court should consider the passage of time in both case 17TR1830 and case 18TR3545 for speedy trial purposes. In response, the State argued the time from 17TR1830 should be ignored because Couch was never arraigned in that case.

The district court heard and denied Couch's motion to dismiss on February 20. The court did not consider the passage of time in case 17TR1830 for his statutory speedy trial

3

claim but did consider it for the constitutional speedy trial claim. The court attributed 172 days of delay to the State on the statutory speedy trial claim, thus finding no violation. The court considered all four of the required factors for determination of his constitutional claim (the length of delay, the reason for the delay, the assertion of the right, and prejudice) and found they collectively weighed in favor of the State. Couch then waived his right to a jury trial and agreed to proceed on stipulated facts. The court found Couch guilty.

ANALYSIS

Couch argues the district court erred in failing to count the passage of time in 17TR1830 and in weighing the constitutional factors. We disagree.

*Statutory right to a speedy trial under K.S.A. 2020 Supp. 22-3402*

Couch presents two arguments on his statutory speedy trial claim, both of which focus on the district court's failure to include the time from the first case in its time calculation. First, he argues he was effectively arraigned at his bond hearing in case 17TR1830 for purposes of commencing the speedy trial statute. Second, he argues Kansas caselaw requires inclusion of the time attributable to the State in 17TR1830 when calculating the statutory speedy trial time in case 18TR3545.

We exercise unlimited review of a district court's computation of days assessed against the speedy trial clock and its legal rulings as to a violation of a defendant's statutory speedy trial right. *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009).

Under Kansas' speedy trial statute, K.S.A. 2020 Supp. 22-3402, if a defendant is charged with a crime and held to answer on an appearance bond, the defendant must be brought to trial within 180 days after arraignment on the charge. K.S.A. 2020 Supp. 22-

4

3402(b). If the defendant is not brought to trial within 180 days after arraignment, the defendant is "entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (e)." K.S.A. 2020 Supp. 22-3402(b).

"The speedy trial clock is triggered at arraignment." *State v. Robinson*, 306 Kan. 1012, 1018, 399 P.3d 194 (2017). If a defendant is not arraigned, the speedy trial statute is not triggered. *State v. Fitch*, 249 Kan. 562, Syl. ¶ 1, 819 P.2d 1225 (1991) ("K.S.A. 22-3402 does not apply until the accused has been arraigned."); *State v. Goss*, 245 Kan. 189, 192, 777 P.2d 781 (1989) (statutory speedy trial clock did not begin to run because defendant was never arraigned).

The statute outlining the requirements for arraignment states, in relevant part:

"Arraignment shall be conducted in open court and shall consist of reading the complaint, information or indictment to the defendant or stating to the defendant the substance of the charge and calling upon the defendant to plead thereto. The defendant shall be given a copy of the indictment or information before the defendant is called upon to plead. Except as provided in subsection (b), if the crime charged is a felony, the defendant must be personally present for arraignment; if a misdemeanor, with the approval of the court, the defendant may appear by counsel." K.S.A. 22-3205(a).

That said, a formal arraignment is not always required to trigger the speedy trial statute. In a misdemeanor case, a first appearance may be used as the arraignment if the requirements of an arraignment under K.S.A. 22-3205 are met. *State v. Taylor*, 3 Kan. App. 2d 316, 320, 594 P.2d 262 (1979). Additionally,

"when a defendant purposefully waives arraignment and the court approves that waiver by accepting the defendant's not guilty plea and schedules the case for trial, the waiver is

5

an effective substitute for the arraignment and there is no need for further arraignment proceedings to begin the running of the speedy-trial clock." *State v. Montgomery*, 34 Kan. App. 2d 549, 553-54, 122 P.3d 392 (2005).

Couch claims his statutory speedy trial deadline began to run on June 9, 2017—the appearance date listed on the appearance bond. In support, he cites *State v. Rosine*, 233 Kan. 663, 664 P.2d 852 (1983). In *Rosine* there were two defendants, and, for speedy trial purposes, the trial court found that both defendants' arraignments occurred on the first appearance date listed on the bonds they executed. The Kansas Supreme Court reversed, holding the appearance date could not be considered the arraignment date because no complaint was filed at that time and so the essential elements of an arraignment under K.S.A. 22-3205 were lacking—no complaint was read to the defendants, no copy of the complaint could have been handed to either defendant, and there was no complaint on which the defendants could base a plea. 233 Kan. at 668-69.

*Rosine* does not support Couch's argument because, while the complaint against him was filed before his first appearance, there is nothing in the record indicating Couch entered a plea in case 17TR1830. K.S.A. 22-3205(a) dictates that one aspect of an arraignment is "calling upon the defendant to plead." Indeed, Couch admits he did not enter a plea but argues he effectively waived arraignment by proceeding to trial, citing *State v. Jakeway*, 221 Kan. 142, 143, 558 P.2d 113 (1976). But *Jakeway* is inapplicable because it did not involve a statutory speedy trial claim and thus did not discuss whether—or when—waiving arraignment triggers the statutory speedy trial clock. Instead, *Jakeway* involved a defendant challenging his conviction after a jury trial because he was not formally arraigned. 221 Kan. at 143-44.

As discussed above, a defendant's waiver of arraignment triggers the statutory speedy trial clock when the defendant *purposefully* waives arraignment, and the court approves the waiver by accepting the defendant's plea of not guilty and scheduling the

case for trial. See *State v. Montgomery*, 34 Kan. App. 2d 549, 553-54, 122 P.3d 392 (2005). Neither Couch nor his counsel ever indicated—either orally or through a filing—in case 17TR1830 that Couch wished to waive arraignment. Since Couch was never arraigned in 17TR1830, the speedy trial statute was never triggered in that case. See *Fitch*, 249 Kan. 562, Syl. ¶ 1; *Goss*, 245 Kan. at 192.

Couch also argues the time from both cases must be added together in calculating his statutory speedy trial claim because, absent a showing of necessity, the State cannot avoid the time limitation by dismissing a case and then refiling identical charges. See *State v. Ransom*, 234 Kan. 322, 327, 673 P.2d 1101 (1983); *State v. Cuezze*, 225 Kan. 274, 278, 589 P.2d 626 (1979). Since the State dismissed the charges out of necessity, Couch's argument is without merit.

The situation in *Ransom* is analogous and thus applicable here. In *Ransom*, the State moved to continue the trial date because it was unable to secure certain witnesses at trial who were essential to the State's case. The district court denied the State's motion because of the number of times the case had been continued. The State then orally moved to dismiss the case without prejudice, and the court granted the motion. The State then refiled identical charges against the defendant. In the first *Ransom* decision that Couch cites, the Supreme Court found the State did not make a showing of necessity and thus the time from the first and second case must be added together when calculating the speedy trial time requirement. *State v. Ransom*, 233 Kan. 185, 190-92, 661 P.2d 392 (1983). But on rehearing, the court reached the opposite conclusion, finding the State *did* make a showing of necessity—despite the judge not specifically making that finding—and as a result, held that the calculation of time started anew in the second case. *Ransom*, 234 Kan. at 327. In so holding, the court stated:

> "While the judge did not specifically find that the State made a showing of
> necessity, such a finding is implicit in the record and in the findings made. The State had

its witnesses under subpoena, but it was wary lest, in the face of the serious conflicting commitments, the witnesses would not appear. If the State proceeded with trial and either one of the witnesses failed to appear, the State's case would be badly crippled. True, the State could later cite the witness for contempt, but that would not fill the resulting void in the State's presentation of its criminal case against the defendant. Witnesses do not always appear, even though they are ordered to do so. . . . The State anticipated this and sought a different trial setting within the remaining 59 days available to it within the statute. Upon the denial of its motion for a continuance, the State dismissed and refiled rather than chance a trial at which one or more vital witnesses would be absent.

"Upon this record, we conclude that the State made a showing of necessity. The *Cuezze* doctrine, therefore, is inapplicable. The dismissal being made upon a showing of necessity, the computation of the statutory time commenced anew." 234 Kan. at 327.

Similarly, the district court here did not specifically find that the State made a showing of necessity, but such a finding is implicit in the record and in the findings made. See 234 Kan. at 327. Like the witnesses in *Ransom*, Deputy Vogt was an essential witness to the State's case since he was the arresting officer. The State subpoenaed Deputy Vogt to appear at the jury trial. And soon after the State realized he could not appear, it sought a continuance of the trial date. The district court also denied the State's motion to continue for the same reason the district court denied the motion to continue in *Ransom*; that is, the number of prior continuances. After the court denied the State's motion to continue, the State had to decide whether to proceed to trial without its key witness (Deputy Vogt) or dismiss the case, and it chose to dismiss the case.

Proceeding without Deputy Vogt would significantly impair the State's case. As in *Ransom*, it is implicit here that the State dismissed the case for necessity. Thus, the computation of the statutory speedy trial time "commenced anew" and began on the date of arraignment in the refiled case, which, as discussed above, was November 30, 2018. See *Ransom*, 234 Kan. at 325, 327.

8

*Computation of statutory speedy trial time*

Because of our unlimited standard of review, we must still determine whether the district court's legal ruling—that Couch's statutory right to a speedy trial was not violated—is supported by the record, reviewing the computation of days assessed against the speedy trial clock de novo. See *Vaughn*, 288 Kan. at 143.

These rules govern the computation of days. Delays resulting from the defendant's application or fault are not counted when computing the statutory period. *Robinson*, 306 Kan. at 1019. Defense counsel's actions are attributable to the defendant unless the defendant voices his or her disagreement with the defense counsel's actions. *Vaughn*, 288 Kan. at 144. When a defendant requests a continuance of a scheduled trial date, the days between the date the district court granted the defendant's motion for a continuance and the date of the rescheduled trial are chargeable to the defendant for speedy trial purposes. *State v. Brown*, 283 Kan. 658, Syl. ¶ 2, 157 P.3d 624 (2007). But when a defendant requests to continue something other than a scheduled trial date (e.g., a request to continue a docket call or a request to continue a pretrial hearing), the defendant is charged with the delay between the intended date and the continued date. See *State v. Arrocha*, 30 Kan. App. 2d 120, 123, 39 P.3d 101 (2002) (attributing delay between intended docket call date and continued docket call date to defense when defense requested later docket call date); see *State v. Martinez*, No. 102,512, 2010 WL 2816816, at *1, 3 (Kan. App. 2010) (unpublished opinion) (attributing delay between original pretrial conference date and rescheduled date to defense when defense requested continuance of pretrial conference).

When a defendant moves to suppress evidence, a reasonable time taken by the parties and the court to process the defendant's motion is chargeable to the defendant— that time begins when the defendant files the motion. *City of Dodge City v. Downing*, 257 Kan. 561, 563-64, 894 P.2d 206 (1995). Still, prosecutorial or judicial procrastination

9

should not be charged to the defendant because it is not the fault of the defendant. Any party filing a motion has a right to assume the court will act expeditiously on the motion. *State v. Roman*, 240 Kan. 611, 613, 731 P.2d 1281 (1987). When a court takes a motion to suppress under advisement for a long time, only a reasonable time—no longer than two or three weeks—is chargeable to the defendant. *Downing*, 257 Kan. at 564.

Here, 447 days passed between Couch's arraignment and the hearing on Couch's motion to dismiss. See *Vaughn*, 288 Kan. at 152 (considering days between arraignment and hearing on motion to dismiss that alleged speedy trial violation when reviewing district court's decision on motion to dismiss). At that hearing, the court attributed 172 days of delay to the State and, as a result, concluded Couch's statutory speedy trial right was not violated. The State had to bring the defendant to trial within 180 days from the date of arraignment, not counting any delay that was the "result of the application or fault of the defendant." K.S.A. 2020 Supp. 22-3402(b). Upon our independent review of the record, we find the court incorrectly calculated the days attributable to Couch. We find 257 of the 447 days were attributable to Couch—making 190 days attributable to the State. Even so, based on K.S.A. 2020 Supp. 22-3402(g) and our discussion later, we do not find this error to be reversable since we do not find that Couch's constitutional right to a speedy trial was violated.

*28 days attributable to Couch*

On December 18, 2018, Couch moved to continue the pretrial conference that had been set for that date, and the district court continued the pretrial conference to January 15, 2019. The time between the original pretrial conference date (December 18) and the rescheduled date (January 15) is attributable to Couch and totals 28 days. See *Arrocha*, 30 Kan. App. 2d at 123; *Martinez*, 2010 WL 2816816, at *1, 3.

*48 days attributable to Couch*

On January 14, 2019, Couch moved to suppress. The district court denied the motion at a hearing on February 4. The time between the filing date and the date the court denied the motion is attributable to Couch. See *Downing*, 257 Kan. at 563-64. But Couch was already charged through January 15, 2019 (based on his motion to continue mentioned above), so the delay attributable to his motion to suppress should begin to run on January 15 (to avoid double-counting) and is only 20 days.

Since Couch's motion to suppress caused the district court to continue the pretrial conference, and because Couch requested a rescheduled pretrial conference at the hearing on his motion, we must attribute that delay to Couch as well. At the February 4, 2019 hearing on the motion to suppress, Couch requested that the court reset a pretrial conference for March 4. We consider this delay as if Couch requested a continuance of a pretrial conference. Thus, the time between the February 4 hearing and the March 4 pretrial conference should also be charged to Couch, adding 28 more days. In total, 48 days were attributable to Couch here.

*137 days attributable to Couch*

The next assessment of time first requires a more detailed description of the facts. On March 5, 2019, Couch filed a second motion to suppress. The district court scheduled a hearing on that motion to suppress for April 25. On the date of the hearing, Couch moved to continue, and the court rescheduled the hearing for June 17. Then, at the June 17 hearing, the State moved to continue. The court granted the State's motion over Couch's objection. When setting a new date for the hearing, the court first asked the prosecutor how long she would need to secure the witness. The prosecutor first responded by estimating she would need one week, but later expressed uncertainty since she may need to bring in another witness The court then asked about the parties' availability in

July. Defense counsel told the court she would be gone for three weeks in July, and August was the soonest she could be available. After the prosecutor stated she would be gone for a couple of days at the beginning of August, the court rescheduled the hearing for August 5. The court heard Couch's motion to suppress on August 5 but did not issue its ruling until August 7.

The district court attributed all the time between the March 5 filing of Couch's second motion to suppress and the date the court denied the motion to Couch. The court attributed the delay resulting from the State's oral motion to continue the hearing to Couch, reasoning that it was Couch's pending motion, and his counsel was unavailable in July. Yet reviewing the computation of days de novo here, the record reveals that a portion of these days should have been attributed to the State, rather than Couch. See *Vaughn*, 288 Kan. at 143. This is because when a defendant moves to suppress, only a *reasonable* amount of time taken by the parties and the court to process that motion should be charged to the defendant. *Downing*, 257 Kan. at 563-64. Caselaw dictates that prosecutorial procrastination during the pendency of a defendant's motion to suppress should not be charged to the defendant because it is not the defendant's fault. See *Roman*, 240 Kan. at 613. Thus, the delay caused by the State moving to continue the hearing on Couch's motion to suppress should not be charged to Couch.

The State should be charged with the time between when it moved to continue (June 17) through the end of June (totaling 13 days) because the record reveals that, but for defense counsel's unavailability, the court would have rescheduled the hearing in July. All the time in July (31 days) should be charged to Couch because that delay was due to his counsel's unavailability. See *Vaughn*, 288 Kan. at 144 (providing defense counsel's actions attributable to defendant unless defendant voices disagreement). Still, because the prosecutor said she would be gone for a few days in the beginning of August, the court ultimately rescheduled the hearing for August 5. The State should be charged with these five days in August. Last, the two days between the hearing and the issuance of the

12

court's decision are attributable to Couch because when the court takes a motion to suppress under advisement, up to two to three weeks is chargeable to the defendant. See *Downing*, 257 Kan. at 564. In sum, out of the 155 days between March 5, 2019, and August 7, 2019 (all of which the court attributed to Couch), only 137 days are attributable to Couch and 18 days are attributable to the State.

*44 days attributable to Couch*

On January 5, 2020, Couch moved to continue both the January 6 pretrial hearing and the January 7 jury trial. The district court granted Couch's motion on January 7. The court rescheduled the jury trial for February 24 but did not reschedule the pretrial hearing. Because the court only rescheduled the trial date, Couch's motion to continue should be treated as a motion to continue a scheduled trial date. Normally, Couch would be charged through the rescheduled trial date. See *Brown*, 283 Kan. 658, Syl. ¶ 2. However, since Couch is appealing the court's denial of his February 12 motion to dismiss on speedy trial grounds, the speedy trial clock stops when the court denied his motion to dismiss on February 20. *Vaughn*, 288 Kan. at 152. Thus, the time between the date the court granted Couch's motion to continue (January 7) and the date his motion to dismiss was denied (February 20) should be charged to Couch, which equals 44 days.

Because only 257 of the 447 days of delay were attributable to Couch, 190 days were attributable to the State. Normally this would mean Couch's statutory speedy trial right was violated, since more than 180 days passed between Couch's arraignment and trial. See K.S.A. 2020 Supp. 22-3402(b). Yet as the State points out, unless this court finds that Couch's constitutional right to a speedy trial was violated, K.S.A. 2020 Supp. 22-3402(g) prevents this court from reversing Couch's conviction for the statutory speedy trial error. The relevant portion of subsection (g) provides:

"If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay." K.S.A. 2020 Supp. 22-3402(g).

The Kansas Supreme Court in *State v. Brownlee*, 302 Kan. 491, 510-11, 354 P.3d 525 (2015), found this portion of subsection (g) is "applicable to any factual situation in which a delay initially charged to the defense is subsequently charged to the State." In *Brownlee*, the court applied subsection (g) after the district court erroneously assessed time to the defendant that should have been assessed to the State. 302 Kan. at 511. This is the same situation presented here. The district court originally assessed all 155 days from March 5 to August 7, 2019, to Couch. Upon review, 18 of these days should have been assessed to the State. Assessing these 18 days to the State brings the State's total days of delay to 190 days rather than 172 days, which would be a statutory speedy trial violation. However, under subsection (g), this court does not reverse Couch's conviction for a statutory speedy trial violation unless considering the 18 days would cause a violation of Couch's constitutional right to a speedy trial or prosecutorial misconduct was related to the 18 days. See K.S.A. 2020 Supp. 22-3402(g).

Couch does not claim prosecutorial misconduct, so we need only examine whether his constitutional speedy trial right was violated to determine whether the exception applies. See *Brownlee*, 302 Kan. at 508-11 (holding subsection [g] prevented reversal on statutory speedy trial grounds when defendant did not assert that his constitutional right to speedy trial was violated or that prosecutorial misconduct occurred). As noted below, we do not find his constitutional right was violated. Thus, subsection (g) prevents reversal on statutory speedy trial grounds.

14

*Constitutional right to a speedy trial*

Couch also argues the district court erred when it found that his Sixth Amendment constitutional right to a speedy trial was not violated.

We review any factual findings underpinning a district court's decision on a defendant's constitutional speedy trial right for substantial competent evidence, and the district court's ultimate legal conclusion drawn from those facts de novo. *State v. Owens*, 310 Kan. 865, 869, 451 P.3d 467 (2019). Since the district court's decision here was based entirely on the record and the parties' arguments, not on any factual findings, we need only determine whether the court's legal conclusion is supported by the record.

The Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. This provision also applies in state courts through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Owens*, 310 Kan. at 869.

In *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the United States Supreme Court identified these four, nonexclusive factors for courts to consider when determining whether a defendant's constitutional right to a speedy trial was violated: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his or her right, and (4) the prejudice to the defendant. The Kansas Supreme Court has adopted these factors and described this test as a balancing test that requires weighing the conduct of both the prosecution and the accused. *Owens*, 310 Kan. at 869. Further, because the test requires balancing, none of the factors are, alone, either necessary or sufficient for finding a violation. Rather, the factors should be considered together along with any other relevant circumstances. 310 Kan. at 869.

*Length of the delay*

In *Barker*, the Supreme Court stated: "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Yet the Kansas Supreme Court has provided that prior caselaw does not establish the time that is presumptively prejudicial, and whether a delay is presumptively prejudicial is analyzed according to each case's particular circumstances. *State v. Hayden*, 281 Kan. 112, 128, 130 P.3d 24 (2006) ("We have resisted using our previous cases to set a specific time limit."); see *State v. Weaver*, 276 Kan. 504, 509, 78 P.3d 397 (2003). "'To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.'" *Owens*, 310 Kan. at 872-73 (quoting *Barker*, 407 U.S. at 531). "[T]he overarching consideration in determining whether the delay is presumptively prejudicial is whether the delay is reasonable given the complexity of the case." *Owens*, 310 Kan. at 875.

Couch asserts the length of the delay here was two years and nine months—running from the date of the incident on June 3, 2017, to the bench trial on March 4, 2020. But before determining whether the length of the delay here was presumptively prejudicial, this court must determine whether the State's dismissal and refiling affected the time this court considers as the length of the delay. In *State v. Gill*, 48 Kan. App. 2d 102, 283 P.3d 236 (2012), this court addressed this issue, and based its holding on *United States v. MacDonald*, 456 U.S. 1, 102 S. Ct. 1497, 71 L. Ed. 2d 696 (1982), and Kansas cases considering the issue in the statutory speedy trial context—including the case discussed here, *Ransom*, 234 Kan. 322. In *Gill*, this court held, as a matter of first impression:

> "[W]hen the State dismisses a charge and files another one, the constitutional speedy trial clock will start anew in the second case if the State dismissed the first case because of

16

necessity or the charge in the second case is not identical to the charge that was previously dismissed. If, however, the first case was not dismissed because of necessity *and* the charge in the second case is identical to the charge previously dismissed, then the dismissal of the first case will be construed as merely tolling the constitutional speedy trial clock. Accordingly, the time period before dismissal and the time period after the charge was reinstated will constitute the applicable length of delay for constitutional speedy trial purposes." *Gill*, 48 Kan. App. 2d at 113-14.

Here, as discussed, the State dismissed case 17TR1830 because of necessity and refiled the same DUI charge in case 18TR3545; the State's failure to refile the second charge (failure to dim headlights) is not significant. See *State v. Hunt*, 8 Kan. App. 2d 162, 166, 651 P.2d 967 (1982) (finding charge in first and second case to be identical despite one case including another charge, noting each count in an information is to be considered as if it were a separate information). But because the constitutional speedy trial clock starts anew under *Gill* if the State dismissed the first case because of necessity *or* the charge in the second case is not identical to the dismissed charge, the fact that the State dismissed the first case because of necessity is enough to conclude that the constitutional speedy trial clock started anew in the second case. Thus, for constitutional speedy trial purposes, the length of the delay considered here began on the date the State refiled the DUI charge—November 8, 2018. See *Gill*, 48 Kan. App. 2d at 114. And because Couch argues on appeal that the district court erred in denying his motion to dismiss, that time ends on February 20, 2020, when the district court denied his motion to dismiss. The length of the delay at issue totals 469 days.

Here, the 469-day delay was presumptively prejudicial. This case involved an ordinary street crime—driving under the influence of alcohol—and thus less of a delay could be tolerated. See *Owens*, 310 Kan. at 872-73; see also *State v. Burgess*, No. 109,029, 2014 WL 1362785, at *4 (Kan. App. 2014) (unpublished opinion) (characterizing DUI charge as ordinary crime). The case was straightforward and not complex. In the refiled case, only three witnesses were subpoenaed to appear at trial—the

arresting officer, the intoxilyzer custodian, and a Kansas Department of Health and Environment representative. In *Weaver*, which also included an ordinary crime, the court found that a 299-day delay was presumptively prejudicial, warranting consideration of the remaining factors. 276 Kan. at 511. Likewise, the 469-day delay here for a straightforward case involving an ordinary street crime is presumptively prejudicial. This factor favors Couch.

*Reason for the delay*

In *Barker*, 407 U.S. at 531, the Supreme Court provided that when considering this factor, "different weights should be assigned to different reasons" for the delay, explaining:

> "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531.

Defense requests for continuances should be weighed against the defendant in considering this factor. See *Owens*, 310 Kan. at 879.

In discussing this factor, Couch focuses his argument on the fact that the State sought a continuance in case 17TR1830 because the prosecutor was unavailable (which is no longer relevant after determining that the constitutional speedy trial clock started anew in the second case), and sought another continuance in case 18TR3545 because the arresting officer was unavailable. He does not mention the continuances he requested. The State, on the other hand, argues that Couch requested several continuances

18

contributing to the delay, and contends the continuances the State requested are analogous to the circumstances described in *Barker*.

During case 18TR3545, Couch requested three continuances. The State requested two continuances, both of which for a valid reason under *Barker*—the State was missing a witness. See 407 U.S. at 531. The State's first request for a continuance occurred at the hearing on Couch's second motion to suppress. There, the prosecutor requested a continuance of the hearing because she needed to return with another witness. In the State's second request for a continuance, the State sought to continue the jury trial because the arresting officer was not going to be available on the scheduled trial date. Both requests were for a valid reason, which justified the delay. Additionally, no facts in the record support a finding that the State made a deliberate attempt to delay the trial to hamper Couch's defense. See 407 U.S. at 531. As a result, this factor favors the State.

*Couch's assertion of his constitutional right to a speedy trial*

Couch asserted his constitutional right to a speedy trial when he moved to dismiss on February 12, 2020. In *Gill*, this court found that the defendant moving to dismiss and alleging a speedy trial violation caused this factor to favor the defendant. See 48 Kan. App. 2d at 115. However, in *State v. Rivera*, 277 Kan. 109, 117-18, 83 P.3d 169 (2004), the Kansas Supreme Court also considered the timing of the defendant's motion to dismiss when weighing this factor. Stated simply, a late motion to dismiss asserting the right caused this factor to not weigh as heavily in the defendant's favor. See 277 Kan. at 117-18. Couch moved to dismiss only 12 days before his last jury trial setting. Considering the length of delay at issue totaled 469 days, Couch's late assertion of his right does not weigh significantly in his favor.

*Prejudice to Couch*

The *Barker* Court also specified that when determining the prejudice to the defendant, prejudice should be assessed in light of the interests that the speedy trial right was designed to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. 407 U.S. at 532. As to the last factor, the *Barker* Court noted:

> "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." 407 U.S. at 532.

Couch concedes no pretrial incarceration occurred here. As to the second interest—minimizing anxiety and concern of the accused—Couch asserts that he missed work for many court appearances, had a cloud over him during the time that the case remained unresolved, and this delay has caused him anxiety and concern. Yet the fact that this was Couch's second conviction for driving under the influence cuts against this assertion. See *Rivera*, 277 Kan. at 119. Finally, as to the last interest, Couch implicitly argues that his defense was impaired for two reasons. First, since he issued subpoenas in case 17TR1830, he claims this shows he intended to call witnesses at trial. He says his ability to secure these witnesses' attendance was affected after the trial did not proceed in 17TR1830. This argument is unconvincing because Couch never tried to subpoena any witnesses in case 18TR3545, nor does he identify any potential witnesses who were unable to testify. The fact that he proceeded to trial on stipulated facts, rather than calling witnesses, further undercuts any claimed prejudice.

Second, he argues the passage of time affected his ability to personally testify to the event, since it occurred over two years ago. Yet in *Rivera*, when the court considered the defendant's claim that his defense was impaired because some of the witnesses could

not remember the events, the court provided that his claim had to be balanced against his contribution to the delay in his trial. 277 Kan. at 119. Here, the incident occurred on June 3, 2017. Couch requested seven continuances and filed one motion to suppress in case 17TR1830, and he requested three continuances and filed two motions to suppress in case 18TR3545. Thus, overall, he contributed significantly to his delay in being brought to trial. Further, even if the passage of time has affected Couch's ability to accurately recall the event, the evidence included Deputy Vogt's body camera footage of the stop. Couch would not be prejudiced by the delay because he could refresh his recollection with this footage. We find the delay did not prejudice Couch, so this factor weighs in the State's favor.

In sum, *Barker* requires this court to weigh all four factors in determining whether the delay violated Couch's constitutional right to speedy trial. The 469-day delay here was presumptively prejudicial considering the simplicity of the case and the charge being an ordinary street crime. We also give slight weight to Couch's late assertion of his speedy trial right. That said, the other factors favor the State including, most importantly, there was no showing of actual prejudice to Couch. We find Couch's constitutional right to a speedy trial was not violated and the district court did not err in denying his motion to dismiss.

Affirmed.